IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KEVIN WAYNE DICKSON          §
(TDCJ No. 1946777),          §
                             §
            Petitioner,      §
                             §
V.                           §          No. 3:18-cv-1668-G-BN
                             §
LORIE DAVIS, Director        §
Texas Department of Criminal Justice,   §
Correctional Institutions Division,     §
                             §
            Respondent.      §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Kevin Wayne Dickson, a Texas inmate, filed a pro se application for

writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt. No. 3. This resulting action has

been referred to the undersigned United States magistrate judge for pretrial

management under 28 U.S.C. § 636(b) and a standing order of reference from Senior

United States District Judge A. Joe Fish.

The State filed a response opposing relief, *see* Dkt. No. 12, to which Dickson filed

a reply. *See* Dkt. No. 20.

For the reasons explained below, the Court should deny Dickson's federal habeas

petition.

**Applicable Background**

A jury found Petitioner guilty of the offenses of murder and assessed his

punishment at life imprisonment. *See Dickson v. State*, No. 05-14-01061-CR, 2016 WL

1

772766, at *1 (Tex. App. – Dallas February 29, 2016, no pet.); *see State v. Dickson*, No. F-1257075-K (4th Crim. Dist. Ct., Dallas Cty., Tex.). The Dallas Court of Appeals affirmed the judgment of the trial court. *See Dickson*, 2016 WL 772766, at *8. Dickson did not file a petition for discretionary review with the Texas Court of Criminal Appeals ("CCA"). *See* Dkt. No. 3 at 3.

Dickson filed a state application for writ of habeas corpus claiming his attorney was constitutionally ineffective on numerous grounds; prosecutorial misconduct by using false evidence and by coaching witnesses; trial court error by failing to grant a suppression motion and by allowing extraneous, inadmissible evidence; and that he is actually innocent. *See* Dkt. No. 14-33 at 5-28. On April 11, 2018, the CCA denied Dickson's application without written order on the findings of the trial court without a hearing. *See Ex parte Dickson*, WR-48,121-03 (Tex. Crim. App. April 11, 2018); Dkt. No. 14-25.

In his timely-filed federal habeas application, Dickson raises the same grounds for relief that he raised in his state application. *See* Dkt. No. 3 at 7-16.

## Legal Standards and Analysis

I.   <u>Claims</u>

Dickson makes three claims of ineffective assistance of counsel, two claims of prosecutorial misconduct, two claims of trial court error, and a claim that there was insufficient evidence to convict. *See* Dkt. No. 3 at 7-17.

Where a state court has already rejected a claim on the merits, a federal court

2

may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g., Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102 (internal quotation marks omitted); *see Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And

"even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id*. Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where

the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Richter*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *cf. Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from

thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

That is, a Section 2254 petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

### A.    Ineffective Assistance

Dickson makes three claims of ineffective assistance of counsel. Specifically, Dickson argues counsel was ineffective by (1) failing to call expert ballistics and toxicology expert, (2) failing to move to suppress evidence based on misrepresentations in the probable cause affidavit, and (3) failing to investigate mitigating evidence. *See* Dkt. No. 3 at 7-10.

The Court reviews claims concerning the alleged ineffective assistance of counsel ("IAC"), whether at trial or on direct appeal, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner

must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See id.* at 687-88. A petitioner must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F. 3d 662, 667 (5th Cir. 1995). To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)).

The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746,

8

752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F. 3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does

not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more probable-than-not standard is slight and matters 'only in the rarest case." *Id*. at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F. 3d 347, 351 (5th Cir. 2010). Where the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id*. at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in

10

tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. \_\_\_\_, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

Dickson claims that his counsel's defense was inadequate in that he failed to present an expert "to testify about gunshot residue" ("ballistics expert") and "an expert toxicologist to impeach the credibility of the deceased dying declaration." Dkt. No. 3 at 7-8. Dickson contends that a ballistics expert "would have established that a reasonable doubt existed as to the state's expert's theory of being shot inside [Dickson's] vehicle and pushed out into the street." Dkt. No. 3 at 8. He asserts that a

toxicologist could have "impeach[ed] the credibility of the deceased's dying declaration" and "would have been able to testify as to the competency level of the deceased due to the drugs." *Id*.

Dickson's conclusory statements are insufficient. "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." *Evans v. Cockrell*, 285 F.3d 370, 377 (citation omitted). Petitioners alleging ineffective assistance of counsel must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). This requirement applies to "uncalled lay and expert witnesses alike." *Id*.

Here, Dickson fails to name any ballistic or toxicology expert witnesses, much less demonstrate that they were available and willing to testify. Thus, Dickson's claim is insufficient to demonstrate counsel provided ineffective assistance.

Dickson next contends that his counsel was ineffective by failing to move to suppress evidence "based on material misrepresentation of facts contained in the probable cause affidavits." Dkt. No. 3 at 7. Dickson alleges that the witnesses failed to "confirm a make or model, but described the vehicle as 'brownish maroon or black SUV type vehicle" and that "the description in the search warrant was obtained by police surveillance, not any witness." *Id*. at 9. Dickson provides no support from the record for this claim. Dickson's claim, standing alone, unsupported by evidence from the

record, is insufficient. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) (stating "[m]ere conclusory statements do not raise a constitutional issue in a habeas case."). Furthermore, Dickson fails to demonstrate, or even allege, how his attorney's supposed deficient performance prejudiced him. Presenting "conclusory allegations" of deficient performance or prejudice is insufficient to meet the *Strickland* test. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

Dickson additionally contends that counsel provided ineffective assistance by failing to investigate mitigating evidence. *See* Dkt. No. 3 at 10. Specifically, Dickson alleges that his counsel only spoke to him for less than two hours before trial and that counsel "never discussed anything with applicant in regards to any character witnesses that would have been available." Dkt. No. 3 at 10-11. This conclusory claim is also insufficient to demonstrate his attorney provided ineffective assistance. *See Miller*, 200 F.3d at 282. Dickson's claim is also insufficient as he fails to name any character witness that his attorney should have, but failed to call, or to demonstrate that any witnesses were available and willing to testify. *See Day*, 566 F.3d at 538.

To the extent that Dickson argues that his counsel failed to investigate mitigating evidence other than character witnesses, Dickson fails to specify what any investigation by his counsel would have revealed or how it would have altered the outcome of his trial. This is insufficient. A petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the

trial." *Trevino v. Davis*, 829 F.3d 328, 338 (5th Cir. 2016) (internal quotations omitted). And, as to Dickson's statement that his counsel "spoke to [him] less than two hours before trial," this complaint is also insufficient. The United States Court of Appeals for the Fifth Circuit has explained that "brevity of consultation time with the client does not establish a claim for ineffective assistance of counsel unless a defendant can show what benefit would have resulted from more consultation time." *United States v. Bernard*, 762 F.3d 467, 478 (5th Cir. 2014).

And the undersigned has reviewed the state habeas court's findings and conclusions as to the applicable IAC claims, *see* Dkt. No. 14-32 at 14-16, and, because not one amounts "to an unreasonable application of *Strickland* or an unreasonable determination of the evidence," *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)), Dickson fails to show that his Sixth Amendment right to effective counsel was violated. Dickson also has not shown that these state court determinations are unreasonable by showing there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### B.    Prosecutorial Misconduct

Dickson makes two claims of prosecutorial misconduct. He argues that the prosecution knowingly (1) used false ballistics evidence at trial and (2) coached and manipulated witness testimony. *See* Dkt. No. 3 at 10, 12-13.

Prosecutorial misconduct may "so infec[t] the trial with unfairness as to make

14

the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765 (1987) (citation and internal citation omitted). To demonstrate a due process violation in allegations of a prosecutor's use of perjured testimony, a petitioner must prove (1) the testimony in question was actually false, (2) the prosecutor was aware of the perjury, and (3) the testimony was material. *See Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). But perjury is not established by mere contradictory testimony from witnesses, inconsistencies within a witness' testimony, and conflicts between reports, written statements, and the trial testimony of prosecution witnesses. *See United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989); *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). Rather, "omissions merely go to the credibility of the witnesses, an area within the province of the jury." *Martinez-Mercado*, 888 F.2d at 1492.

Similarly, if it is alleged that the prosecution used false evidence, a petitioner "must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false." *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997).

In his first claim of prosecutorial misconduct, Dickson argues that the Southwestern Institute of Forensic Science ("SWIFS"), the organization that conducted the ballistics testing in his case, has "a long history of improper methods" and that the

prosecution was aware of this. Dkt. No. 3 at 10. Dickson further states that "the testing procedures used by [SWIFS] has been fraught with falsified results, invalid testing procedures, and corruption, especially concerning ballistics results." *Id*. But Dickson provides no evidence to demonstrate that the results of the ballistics tests in his case was false. He only expresses his disagreement with the results and states that "every other report" consistently showed results different from those found by SWIFS. *Id*. Dickson's argument fails to demonstrate a due process violation. While the results of ballistics testing are material to a murder case in which the victim was killed by a gun shot, as in this case, Dickson fails to demonstrate that the evidence provided by the SWIFS employee was actually false, or, that even if it was false, the prosecutor was aware of its falsity. Thus, this argument fails. *See Nobles,* 127 F.3d at 415.

Dickson also claims that the prosecutor committed misconduct by "coaching and manipulating testimony." Dkt. No. 3 at 13. He specifically alleges that the prosecutor knew "that Ariel Wesley and Shaquira Robinson initially reported that [the victim] was shot during a drive-by, after approaching the vehicle" and that their "in court testimony had to be manipulated to show [the victim] was shot in the vehicle" in order to conform to the prosecution's theory. *Id*.

Again, Dickson fails to show a due process violation. First, Wesley and Robinson both testified at trial that they saw the victim get pushed from the vehicle after they heard gun shots. *See* Dkt. No. 14-15 at 160 (Wesley), 174 (Robinson); Dkt. No. 14-18 at 46-48 (Wesley). Although a police detective testified that Wesley and Robinson told him that the victim had walked up to the side of the vehicle, then ran to the front of

the vehicle after being shot and tried to cross the street as more shots were fired, *see*

Dkt. No. 14-18 at 120-22, both Wesley and Robinson testified that they did not relay

that version of events to the detective, or did not remember relaying that version of

events, *see id.* at 52-53 (Wesley), 82-84 (Robinson).

Furthermore, even if Wesley's and Robinson's testimony varied from what they

had previously told to the detective, this type of inconsistency is not sufficient to

demonstrate that either witness committed perjury. Contradictory trial testimony is

a credibility question for the jury. *See Koch*, 907 F.2d at 531.

Because Dickson fails to show Wesley or Robinson committed perjury, he

necessarily also fails to demonstrate that the prosecutor violated his right to due

process through the knowing use of perjured testimony at trial. *See Faulder*, 81 F.3d

at 519.

In any event, as to both of these claims, the state habeas court stated:

> In his fourth ground for relief, Applicant alleges that the
> State committed misconduct by knowingly presenting false
> ballistics evidence.
>
> Applicant has not provided the Court with any evidence,
> beyond a blanket assertion that Texas forensic labs have a
> long history of falsified results, that the test results in his
> specific case were falsified. Conclusory allegations are
> insufficient on their own to merit habeas relief and the
> Court may deny relief when an applicant states only
> conclusions without supporting facts. *Ex parte Young* 418
> S.W. 2d 824 (Tex. Crim. App. 1967); *Ex parte McPherson*, 32
> S.W.3d 860, 861(Tex Crim. App. 2000). Therefore, the Court
> finds that Applicant's fourth ground for relief is without
> merit and recommends it be denied.
>
> In his fifth ground for relief, Applicant alleges that the State

17

committed misconduct by manipulating eyewitnesses Ariel
Wesley and Shaquira Robinson to falsely testify that the
deceased was shot inside Applicant's vehicle.

Again, Applicant has not provided the Court with any
evidence, beyond his assumption that the State must have
pressured the witnesses to lie, that the State pressured the
witnesses or that their testimony was false. Therefore, the
Court finds that Applicant's fifth ground for relief is without
merit and recommends it be denied.

Dkt. No. 14-32 at 16-17. And Dickson fails to show the state court proceedings resulted

in a decision that was contrary to, or involved an unreasonable application of,

clearly-established federal law, as determined by the Supreme Court of the United

States, or that the decision was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at

402-03; *Childress v. Johnson*, 103 F. 3d 1221, l224-25 (5th Cir. 1997). As such, Dickson

fails to show there was no reasonable basis for the state court to deny relief. *See*

*Richter*, 526 U.S. at 98.

### C.    Trial Court Error

Dickson argues that the trial court erred by denying his motion to suppress

evidence gained from searches of his cell phone and vehicle, *see* Dkt. No. 3 at 14, and

by allowing in at trial "unadjudicated extraneous offense testimony," *id*. at 15.

Dickson's argument regarding the suppression motion is procedurally barred

from federal habeas review. Federal court review of a claim is procedurally barred if

the last state court to consider the claim expressly and unambiguously based its denial

of relief on a state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729

18

(1991). And, if the state court explicitly invokes a procedural bar and alternatively reaches the merits of a defendant's claims, a federal court is still bound by the state procedural default. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). Where a state court has explicitly relied on a procedural bar, a petitioner may not obtain federal habeas corpus relief absent a showing of cause for the default and actual prejudice that is attributable to the default, or that the federal court's failure to consider the claim will result in a miscarriage of justice. *See Coleman*, 501 U.S. at 750. A miscarriage of justice in this context means that the petitioner is actually innocent of the crime for which he was convicted. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992).

Dickson claims that the trial court erred by denying his motion to suppress evidence gained from searches of his cell phone and vehicle, *see* Dkt. No. 3 at 14, but the CCA denied Dickson's state habeas corpus writ without written order on findings of trial court without a hearing, *see* Dkt. No. 14-25. Regarding this claim, the trial court made the following findings and determinations:

> In his sixth ground for relief, Applicant alleges that the trial court committed error by denying his motion to suppress.
>
> The Court finds that Applicant did not challenge the trial court's ruling on direct appeal. *See Dickson v. State*, No. 05-14-01061-CR, 2016 WL 772766 (Tex App -Dallas Feb. 29, 2016, no pet.). By failing to raise this challenge on appeal Applicant forfeited it on habeas review. *See Ex parte Kirby*, 492 S.W.2d 579, 581(Tex. Crim. App. 1973) (denying applicant's challenge to the legality of a search and seizure because "the failure to raise the question of the sufficiency of the affidavit on direct appeal is tantamount to an abandonment of that complaint." (*citing Connally v. State*, 492 S.W.2d 578, 578 (Tex. Crim. App 1973). Furthermore,

19

> an Article 11.07 writ of habeas corpus should not be used to litigate matters that should have been raised on direct appeal. *Ex parte Banks* 769 S.W.2d 539 (Tex. Crim. App. 1989). Therefore, the Court finds that Applicants sixth ground for relief is without merit and recommends it be denied.

Dkt. No. 14-32 at 17. By adopting the findings and conclusions of the trial court, with its citation to *Ex parte Banks*, the CCA expressly and unambiguously relied on a state procedural bar determination. *See Ex parte Banks*, 769 S.W.2d at 540 (stating "[t]he Great Writ should not be used to litigate matters which should have been raised on appeal."). The Fifth Circuit has recognized that this state rule is independent and adequate to bar federal habeas corpus review. *See Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006). Thus, Dickson's claim is procedurally defaulted. *See Harris*, 489 U.S. at 264-65; *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). And this alleged ground for relief is therefore procedurally barred. *See Coleman*, 501 U.S. at 750.

Dickson next argues that the trial court erred by allowing in at trial "unadjudicated extraneous offense testimony." Dkt. No. 3 at 15. In his federal habeas petition, Dickson does not allege a violation of the United States Constitution or federal law. He cites only to the Texas Rules of Evidence and the Texas Code of Criminal Procedure. *See Id.* "Federal habeas relief cannot be had 'absent the allegation by a petitioner that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (citing *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)); *accord Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[w]e have stated many times that

'federal habeas corpus relief does not lie for errors of state law.' ... In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States."); *Hill v. Johnson*, 210 F.3d 481, 491 (5th Cir. 2000); *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998). Thus, Dickson's claim is not cognizable in a federal habeas proceeding.

And, even if the claim were cognizable, Dickson provides no support from the record for this claim. He only states, without further support from the record, that there was no evidence that Dickson was responsible for threatening and intimidating a prosecution witness and that, thus, the trial court erred in allowing in at trial testimony to that effect. *See* Dkt. No. 3 at 15. Dickson's claim, unsupported by evidence from the record, is insufficient. *See Schlang*, 691 F.2d 799 (stating "[m]ere conclusory statements do not raise a constitutional issue in a habeas case.").

## D.    Actual Innocence

Dickson contends that he is actually innocent. *See* Dkt. No. 3 at 16. The Respondent treated this claim as a claim of insufficient evidence to support the conviction. *See* Dkt. No. 12 at 28-31. And a review of the claim would suggest that Dickson is arguing that the evidence presented at trial was insufficient to support the conviction. *See* Dkt. No. 3 at 16. But, in his reply to the respondent's response, Dickson adamantly asserts that he is claiming actual innocence and not making a sufficiency-of-the-evidence argument. *See* Dkt. No. 20 at 18. He specifically states that he "does not challenge the sufficiency of the evidence." *Id*. Dickson further states that "this court

21

should recognize Dickson's claim as actual innocence and consider it for review." *Id*. at 19. The Court therefore considers Dickson's claim to be one of actual innocence.

A claim of actual innocence does not state an independent, substantive constitutional claim and is not a basis for federal habeas corpus relief. *See Herrera v. Collins*, 506 U.S. 390 (1993). Claims of actual innocence are not cognizable on federal habeas review. *See United States v. Fields*, 761 F.3d 443, 479 (5th Cir. 2014) ("[Fifth Circuit] caselaw does not recognize freestanding actual innocence claims."). A claim of actual innocence may not be a basis for federal habeas corpus relief absent an independent federal constitutional violation. *See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).

Dickson has not shown an independent federal constitutional violation, and so his actual innocence claim is not cognizable on federal habeas appeal.

### Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

22

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 29, 2019

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE